CHRISTINA BLAKIE *vs.* BROOKLINE GAS LIGHT COMPANY.

Suffolk.   November 12, 1896. — November 12, 1896.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Due Care — Negligence — Question for Jury.*

A verdict for the plaintiff in an action for personal injuries occasioned by the inhaling of gas which escaped from the pipes of the defendant company in a house in which the plaintiff was working will not be disturbed, if there was evidence for the jury of the due care of the plaintiff and of the negligence of the defendant, and that the injuries were received in consequence of the negligence.

TORT, for personal injuries occasioned to the plaintiff by the inhaling of gas, which escaped from the pipes of the defendant company in a house in which the plaintiff was working.

Trial in the Superior Court, before *Richardson*, J., who refused to direct a verdict for the defendant, and submitted the

case to the jury, who returned a verdict for the plaintiff; and the defendant alleged exceptions, in substance as follows.

The plaintiff testified that on December 5, 1893, she was employed as seamstress in the back room on the second floor of the house of one Manning, at the corner of Moreland Street and Homer Place, in Roxbury, Boston; that the first perception she had of gas was when she went down stairs into the basement between three and four o'clock; that she did not think the odor was strong, and then went up stairs and stayed until six o'clock, working the latter part of the time by gaslight; that the odor seemed about the same through the afternoon; that when she got up from her chair at six o'clock she felt faint, with a dizzy headache; that the more she moved the worse she felt, and that she had to hold herself to keep steady on her feet; that she felt her way down stairs, fearing she would fall, and went outdoors; that the moment she opened the front door when she got to the air she gave a scream and had a strange feeling, and was unable to get her breath, and went along the piazza moaning, until she came out and crossed the street; that the first she knew was when she came to consciousness, lying on her back in the snow; that then she got hold of the fence and went along moaning and gasping for breath; that she was unable to get into a street car, but finally with difficulty got to her own home in Sharon Street, and up two flights to her tenement; and that the same symptoms continued, and others appeared, and although she had previously been well she had not been well since, and she explained the sufferings and symptoms she experienced and had experienced since leaving Manning's house on the night of December 5. She further testified that when she left Manning's house it was snowing; and that she had never heard of water gas before, and did not know its properties.

One Jenkins, called by the plaintiff, testified that he was a chemist, and inspector of gas and gas meters for the Commonwealth, and that it was his duty to analyze gas used in different parts of the Commonwealth; that in the autumn of 1893, before December, the defendant began making water gas, having made coal gas previously; that the gas made by the defendant contained about twenty-five per cent of carbonic oxide; and that carbonic oxide is an active poison, and that a comparatively

small amount of it, if breathed, would be fatal to a human being.

The defendant admitted that, at about one o'clock in the morning of December 6, there was an explosion of gas at Manning's house, which greatly injured it.

One Connors, called by the plaintiff, testified that he had worked for the Roxbury Gas Light Company since 1866; that he was called out at about ten o'clock on the night of the explosion in Manning's house; that the defendant had laid a main on Moreland Street three or four days previously; that there was a T (an outlet where they connect with another branch main) in that main facing Homer Place; that the bore was four inches in diameter; that he smelled gas coming up through the ground where this connection was, and when he put his hand back of the place, it blew up against the back of his hand; that he knelt on the ground and smelled gas coming up pretty strong; that he was not five feet away from the place where the T was on Moreland Street; that he then went into Manning's house, and saw that it was in very poor condition; that though he did not examine the Roxbury Gas Light Company's pipes at that time, he knew that they were sound, and that the escaping gas did not come from them; that the gas came up through the ground, and that it must have come from the defendant's pipe.

One Connelly, called by the plaintiff, testified that he also worked for the Roxbury Gas Light Company; that he was present the next day after the explosion in Manning's house, at the time when the excavation of the Brookline Gas Light Company main was made; that when the men dug down at the point of the main opposite Homer Place at the outlet of the T, they found a board up against it, and stones up against the board, and dirt filled over all level with the street; that he did not examine the pipes of the Roxbury Gas Light Company, and never made an examination of the pipes and did not know their condition; that he was sent there by Connors to see what the Brookline men would find, and not to do anything himself; that going down Homer Place he saw one of the Roxbury pipes where the Brookline men dug; that there was gas all around the street, but that so far as he knew there was no gas escaping

at that time; and that he was there a couple of days to see what the defendant's men would find.

One Bundy, a physician called by the plaintiff, testified that he first attended the plaintiff early in January, 1894; that he found her sick and weak, suffering from pains somewhat confined to the lower part of the body, and from dyspepsia, dizziness, and forgetfulness, loss of appetite, and a species of melancholia, and that she was low spirited; all of which symptoms he ascribed to the inhaling of the gas.

He further testified that the general effects of the gas poisoning passed off in about three months, and that the suffering in the lower parts of the body was caused by the plaintiff's exposure to the cold when she lay in the street unconscious, in aggravating a physical trouble which happened to her seventeen years before.

One Lund, called by the defendant, testified that a person suffering from gas poisoning by inhaling gas in a house, would usually feel better rather than worse on coming out of doors into the fresh air, and physicians called by the defendant contradicted the testimony of Doctor Bundy.

*J. Lowell, Jr.*, for the defendant.

*D. E. Ware*, for the plaintiff, was not called upon.

BY THE COURT. There was evidence for the jury of due care on the part of the plaintiff and of negligence on the part of the defendant, and that the plaintiff received her injuries in consequence of the negligence of the defendant.

*Exceptions overruled.*